## BUTLER BROS. v. DUNSWORTH et al.
### (No. 8544.)

(Court of Civil Appeals of Texas. Dallas. June 4, 1921. Rehearing Denied July 2, 1921.)

**1. Bills and notes 357 — Pledgee of notes held bona fide holder to extent of debt.**

Where wholesale merchants acquired from a purchaser of goods the notes of a third person as collateral security, the transaction terminated in the same legal effect as to liability which would have resulted from an outright purchase of a note for the amount of the debt at a price equal to its face value in due course of trade before maturity and without notice of infirmity, and the pledgee of such notes is a bona fide holder. only to the extent of the amount of the debt, and can demand no more at maturity.

**2. Bills and notes 534 — Pledgee of notes held entitled to recover attorney's fees.**

Where plaintiff acquired notes of a third person as the only security for a debt, and the maker of the note refused to pay or tender the amount of the debt with interest on the ground that the notes were fraudulently acquired by the payee, and that consideration had failed, merely offering to pay if defendant would deliver all notes assigned and without indemnifying plaintiff against the payee's claims, the plaintiff could recover from the maker attorney's fees as specified in the notes.

**3. Bills and notes 126 — Provision for attorney's fees not part of debt until after default.**

The provision in a note for attorney's fees to be payable if the note is placed in an attor-

ney's hands or collected by legal proceedings is not a part of the debt until after negotiability ceases by virtue of maturity and. default.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by O. C. Dunsworth against Butler Bros. and others, with cross-action by the named defendant. Judgment for Butler Bros., but denying its claim for attorney's fees, and it appeals. Reversed, and judgment rendered allowing attorney's fees.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

John Doyle, of McKinney, for appellee.

HAMILTON, J. This appeal is presented as an agreed case, stated as follows:

"On May 1, 1919, Thomas F. Lee conveyed to O. C. Dunsworth 50 acres of land in Cameron county, Tex., and contracted with said Dunsworth to clear said lands ready for plowing, to construct adequate irrigation facilities thereon, and to fence the same. As part of the transaction and as consideration for said conveyance and contract, said Dunsworth paid said Lee $1,500 in cash, assumed the payment of three notes already charged against said lands, and executed and delivered to said Lee his four notes, payable to the order of said Lee, one in the sum of $3,200, three in the sums of $677.77 each, said notes maturing respectively on or before the 1st days of October in the years 1919, 1920, 1921, and 1922. All of said notes were of even date with said deed, bore interest from date until maturity at 6 per cent. per annum, and after maturity at 10 per cent. per annum, and all were secured by vendor's lien on said lands. All of the notes were negotiable in form under the law merchant and under the statutes of the state of Texas pertaining to negotiable instruments. Said notes all provided for the payment by the maker thereof of 10 per cent. additional upon the principal and interest as attorney's fees in case said notes were placed in the hands of an attorney for collection or were collected by suit or other legal proceedings.

"Thereafter, and prior to July 1, A. D. 1919, said Lee validly indorsed in blank all said notes and transferred and delivered the same, so indorsed, to Butler Bros., a corporation, in order to purchase on credit .from Butler Bros. certain merchandise, Butler Bros. being wholesale merchants in Dallas, Dallas county, Tex. Relying upon such security, Butler Bros. sold and delivered such merchandise to said Lee on or about July 1, 1919, upon credit to mature September 10, 1919. The merchandise so purchased, with accrued interest thereon to date of trial, was of the value and price of $2,622.10, and same, though long since past due, was wholly unpaid at the date of the trial. The indorsement, transfer, and delivery of said notes from said Lee to Butler Bros. was made in due course of trade for value, as aforesaid, as security for said indebtedness, and was prior to the maturity of any of said notes or any installment of interest thereon, and Butler Bros. had no notice nor knowledge of any infirmity in said notes or any of' them, or of any want

of or failure of consideration in said notes or any of them. Butler Bros. ·are now the in-. dorsees, transferees, and holders thereof under the circumstances and for the considerations herein stated. Said notes carried provisions entitling the holder, at its election, to mature all of the notes in case of default in the payment of any note or any installment of interest thereon at maturity, and Butler Bros., prior to the commencement of this suit, elected to declare all notes and all interest thereon to be due and payable because of default in the payment of the first maturing note and certain installments of interest upon all notes, which defaults occurred prior to the date of such action by Butler Bros.

"Demand was made by Butler Bros. upon said Lee for the payment of the indebtedness of said Lee to Butler Bros., which demand was refused. Demand was also made by Butler Bros. upon said Dunsworth to pay aforesaid notes and interest, which demand was refused. Said demands were made prior to the institution of this suit.

"Shortly prior to the commencement of this suit said Dunsworth applied to Butler Bros. to surrender to him the four notes aforesaid, and in that connection offered to pay to Butler Bros. the indebtedness due it by said Lee, with lawful interest thereon, provided Butler Bros. would surrender and deliver to said Dunsworth for cancellation the four notes aforesaid in its possession. Said Dunsworth thereupon stated to Butler Bros. that his execution of the notes was obtained by fraud, and that the consideration for same had failed. Butler Bros., upon advice of its counsel, declined to surrender the notes to Dunsworth, except upon being indemnified against claims which might be made against it by said Lee for alleged wrongful surrender of said notes to Dunsworth, but Butler Bros. offered to accept payment from Dunsworth of the indebtedness due to it by said Lee, or to accept payment of so much of the Dunsworth notes as would cover such indebtedness, and offered to hold possession of the notes pending such legal action to cancel the notes as said Dunsworth might wish to institute against said Lee. Said Dunsworth declined to adopt the method proposed for handling the matter, and stated that he would bring suit to cancel the notes and liens securing same, subject to· such interest therein as Butler Bros. might establish, and stated to Butler Bros. and their attorneys that he did not question their indebtedness, but admitted the same to be correct. Butler Bros., having theretofore elected to declare all the notes to be due, thereupon placed the same in the hands of its attorneys for collection and authorized suit thereon and agreed to pay its attorneys the fee stipulated in said notes for their services in its behalf.

"Thereafter, on December 13, 1919, Dunsworth brought this suit in the district court for the Sixty-Eighth judicial district of Texas, Dallas county, against Thomas F. Lee, his wife, Mrs. Julia Gorby Lee, and Butler Bros., to cancel and annul the notes above described, and to cancel and annul the apparent lien by which they were secured upon the lands mentioned. He alleged false representations of Lee in inducing his execution of the notes, and also alleged failure of consideration upon which the notes were executed and alleged as against But-

ler Bros., that that concern had the notes in its possession, and prayed the court to adjudicate and establish what rights, if any, Butler Bros. had therein, and that said notes be adjudged, canceled, and returned to plaintiff. After said suit was commenced, Butler Bros. instructed its attorneys to file, and its attorneys did file, cross-action on behalf of Butler Bros.' interest in the matters and things involved herein, as shown in this statement. At the trial claims of said Dunsworth as to the voidability of the notes as between him and Lee were proved. The facts already stated as to Butler Bros.' acquisition of the notes, its interest in and to the same, and its transactions with Lee and Dunsworth, as hereinabove set out, were also all proved.

"Thereupon Dunsworth, in open court, admitted that Butler Bros. was entitled to enforce said notes against him and to establish and foreclose liens on said lands in sums sufficient to discharge the indebtedness of said Lee to Butler Bros., viz. $2,622.10, but contended that Butler Bros. was not entitled to recover any attorney's fees upon such portion of the notes. Butler Bros., on the other hand, contended that it was entitled to recover its attorney's fees being the sum of $262.21. The judgment rendered by the court is referred to and will be put in the record herein. It denied the claims of Butler Bros. for the allowance of its said attorney's fees.

"The sole question to be decided upon the appeal or writ of error which may be taken out herein, is whether or not, under the circumstances stated, Butler Bros. is entitled to recover judgment for the 10 per cent. attorney's fees stipulated for in the notes upon the $2,622.10, to secure which said notes were indorsed, transferred, and delivered to Butler Bros. If not, the judgment of the trial court should be affirmed, otherwise it should be here reversed and rendered so as to increase the recovery of Butler Bros. upon said notes by the sum of such attorney's fees, viz. $262.21, with interest thereon at 6 per cent. from the date of the judgment of the court below, with costs of appellate proceedings."

[1] The transaction by which Butler Bros. acquired the notes as collateral security terminated in the same legal effect as to liability, which would have resulted from an outright purchase of a promissory note for $2,622.10 at a price equal to its face value, in due course of trade, before maturity, and without any notice of infirmity. Butler Bros'. rights in relation to the notes are coextensive with those which would have arisen from such purchase and are to be measured by the standard applicable in such circumstances. Therefore the question decided may be thus correctly stated: Has the bona fide holder of a negotiable promissory note acquired before maturity, as collateral for a debt equal to its face value, a legal right to enforce the provision for attorney's fee upon the maker's refusing to pay the note because of conceded fraud and failure of the consideration rendering it void in the payee's hands, the right to attorney's fee being unquestioned upon any ground except fraud and failure of consideration, as stated?

[2] That the pledgee of notes transferred under such state of facts as is comprehended in this case is a bona fide holder only to the extent of the amount of the debt is beyond question the settled law. He can lawfully demand no more at maturity. But when such collateral is taken as the only security for the debt, as appears to have been the case here, and the maker of the note refuses to pay or tender the amount of the debt with interest for which the note stands as collateral, the right to enforce payment of the collateral note to the extent of the debt and interest secured by it arises, and we think that right may be exercised in accordance with the stipulations for attorney's fees provisionally inserted in the note for the agreed benefit of the holder of the note in the event of default in payment at maturity.

The conditions superimposed by the defendant in error in offering to pay plaintiff in error's principal debt and interest rendered the offer tantamount to declining to pay at all. His offer to pay only provided Butler Bros. would deliver to him all the notes assigned, no assurance or protection being given or offered in return for such requirement, was a proposition embodying a material curtailment of the existing rights of Butler Bros. as pledgee to which it could not be required to accede.

Accordingly we think the defendant in error thereby put himself in the same attitude he would have occupied had he unconditionally declined to pay any part of the debt and sought to defend against it in its entirety.

While the authorities in treating the rights of innocent holders of negotiable notes as collateral security, to which a defense exists against the payee, seem uniformly to announce in general language that liability does not extend beyond the total amount of the debt to which the notes are collateral, we think an examination and analysis of such holdings upon the subject excludes the idea that the expressions employed were deliberately used to establish the view that, although payment of the amount of the secured debt is refused, and suit is brought to enforce payment, the provision for attorney's fee shall nevertheless be unavailable, and thus the principal cost of enforcing a legal right shall be imposed upon the holder contrary to the terms of the note, although as between the parties this feature of it is as valid as any other. No authority is discoverable which expressly treats the question of attorney's fees in cases like this. The cases holding that the amount of recovery is limited to the amount of the debt secured by the collateral do not consider the question of attorney's fees which alone is here presented, because it seems that in those cases the courts have not been call-

ed upon to determine this particular kind of contention.

Defendant in error has said to plaintiff in error, in effect, that although he is liable for the full amount claimed against him, yet he will not pay any part of it. He has thereby forced upon plaintiff in error the burden of employing and paying attorneys to litigate the claim to judgment. His notes which he has put afloat in the channels of negotiability to pass indiscriminately through the course of trade carry his express indemnification against the outlay of any sum to compel his performance of promised payment to any bona fide holder. This provision for attorney's fees is of equal dignity and force with every other promise embodied in the notes, and the presumption ought to be that it is to be relied upon by a purchaser with faith as full as that which expects and demands payment of the principal and interest for which, in the situation, defendant in error is liable.

[3] The provision for attorney's fees is not a part of the debt, until after negotiability ceases by virtue of maturity and default is made. Then, while it may be said to be transformed to constitute a part of the debt, when steps are taken to compel payment, it nevertheless still, in its nature, is an assurance and a security given against the expense incident to the pursuit of a legal remedy in the event the debtor's failure to perform the obligation expressed by other elements of the note renders necessary the pursuit of a legal remedy. Defendant in error's default having resulted in suit to enforce payment, and his liability pro tanto having been established, he thereby became bound to pay the stipulated attorney's fee, not as a part of the original amount of the note, nor as a part of the original amount for which the note was pledged, but as cost of enforcing a legal remedy against himself, which cost he had validly promised to pay any holder of the notes standing in plaintiff in error's relation to him.

Had the notes been free of infirmities and their validity had been unquestioned, a holder at maturity could have demanded only the principal and interest. Only after default, followed by steps towards suit, would the provision for attorney's fees have become operative. To the extent of plaintiff in error's claim in the instant case the notes were unaffected by any infirmity, and to that extent their validity in its hands, under the circumstances, could not be questioned. At maturity plaintiff in error could demand payment of the notes only in the amount of the account. Such demand and no other was made. Defendant in error declined to pay. Thereupon steps were taken to enforce payment. Defendant in error, by the terms of the notes, had bound himself that in such

event he would pay the amount of attorney's fees incurred in this case by plaintiff in error, and we think that to require him to keep and perform this obligation, under the agreed facts, is not in conflict with the decisions of our courts announcing the general rule that a creditor's recovery upon collateral notes, void in the payee's hands, should be restricted to the amount of the debt for which they are held as collateral. And we believe that under the facts and circumstances of this case we more nearly approximate sound principle and exact justice to uphold appellant's, rather than appellee's contention.

We will therefore reverse the judgment of the trial court, and render judgment allowing attorney's fees, and increasing plaintiff in error's recovery to the extent of $262.21, in compliance with the prayer.